## Lashley Telephone Company v. Durbin.

(Decided March 8, 1921.)

### Appeal from Edmonson Circuit Court.

1. Licenses—Respecting Real Property—Incurring Expenses—Revocation.—Where a license is not a bare, naked right of entry. but includes the right to erect structures and acquire an interest in the land in the nature of an easement, by the construction of improvements thereon, the licensor may not revoke the license and restore his premises to their former condition, after the licensee has exercised the privilege given by the license and erected the improvements at considerable expense; and this rule is particularly applicable to a telephone line constructed by a licensee engaged in the business of serving the public and possessing the right to acquire property for that purpose by condemnation, and where such a line has been constructed under an oral license, the licensor cannot revoke the license and compel the removal of the line.

2. Vendor and Purchaser—Title as Against Third Party—Licenses.—Where a vendee purchases property, over which a telephone line has been constructed, under a parol license from his vendor, and the telephone line is open and visible, he purchases subject to the right of the telephone company to maintain such line, and even if the owner had the right to revoke the license and require the removal of the structure, such right does not pass to the vendee.

3. Vendor and Purchaser—Title as Against Third Party—Licenses—Estoppel.—Under such circumstances the telephone company's right in the premises is limited to the maintenance of the telephone line as it existed at the time of the purchase, and the purchaser is not estopped to complain of the stringing of additional wires.

SIMS, RODES & SIMS, JOHN B. RODES, JOHN H. GILLIAM and B. T. ROUNDTREE for appellant.

LOGAN & McCOMBS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

In the year 1917, Charles Lashley and his two sons began the erection of a telephone system in Edmonson county, for the purpose of affording communication between persons living in that neighborhood. T. L. Bush, who owned a farm, not only encouraged and contributed to the enterprise, but gave the Lashleys permission to construct the system over his farm. Thereupon the Lash-

leys erected fifteen telephone poles with cross arms on Bush's land, and strung thereon two lines of four wires. Afterwards, the Lashley Telephone Company was incorporated and acquired a long distance connection at Leitchfield. About fourteen months after the completion of the system, Bush sold his farm to Ephraim Durbin, who knew that the telephone system had a right of way over the farm. Later on, other persons sought telephone connections and bought boxes for that purpose. In order to accommodate them it was necessary to string two additional wires. After the employees of the telephone company had stretched the wires over the cross arms, but had not attached the same, Durbin cut the wires and removed them from the poles.

This suit was brought by the telephone company to enjoin Durbin from removing or interfering with the telephone system. Durbin filed an answer and counterclaim, in which he asked an injunction requiring the telephone company to remove the poles and wires. On final hearing the petition was dismissed, and plaintiff was directed to remove the poles and wires. From that judgment plaintiff appeals.

Though many courts hold that a licensee is conclusively presumed as a matter of law to know that a license is revocable at the pleasure of the licensor, and if he expend money in connection with his entry upon the land of the latter, he does so at his peril, Minneapolis Mill Co. v. Minneapolis & St. L. R. Co., 51 Minn. 304, 53 N. W. 639; Hathway v. Yakima Water, Light & P. Co., 14 Wash. 469, 44 Pac. 896; Lambe v. Manning, 171 Ill. 612, 49 N. E. 509; Harris v. Gillingham, 6 N. H. 9, 23 Am. Dec. 701; Crosdale v. Laningan, 129 N. Y. 604, 29 N. E. 824, yet it is the established rule in this state that where a license is not a bare, naked right of entry, but includes the right to erect structures and acquire an interest in the land in the nature of an easement by the construction of improvements thereon, the licensor may not revoke the license and restore his premises to their former condition after the licensee has exercised the privilege given by the license and erected the improvements at considerable expense; and this rule is particularly applicable to a telephone line constructed by a licensee engaged in the business of serving the public and possessing the right to acquire property for that purpose by condemnation, and where such a line has been constructed under an oral license, the licensor

can not revoke the license and compel the removal of the line. It is also the settled rule that where a vendee purchases property, over which a telephone line has been constructed, under a parol license from his vendor, and the telephone line is open and visible, he purchases subject to the right of the telephone company to maintain such line, and even if the owner had the right to revoke the license and require the removal of the structure, such right does not pass to the vendee. Carrollton Telephone Exchange Co. v. Spicer, et al., 177 Ky. 340, 197 S. W. 827; L. R. A. 1918A, 950. Here not only was Durbin informed of the fact that the telephone company had a right of way over the land which he purchased, but the telephone line was open and visible. Hence he purchased subject to the right of the telephone company to maintain the line as it then existed, and it was error on the part of the court to compel the telephone company to remove its poles and wires.

It remains to determine whether the telephone company had the right to string additional wires. In its behalf it is argued that it was understood by the Lashleys and Bush that the Lashleys should furnish the telephone service to the local community, and the right of way was granted for that purpose. Hence it was not only contemplated that the company should have the right to build the wires that were then necessary, but to build such additional wires as might be needed to meet the requirements of the community in the future. Under these circumstances Durbin acquired the property burdened not only with the wires then in use, but with such additional wires as might be reasonably necessary to accommodate the company's patrons, and the stringing of the two additional wires did not impose any additional burden. It seems to us that the case is not controlled by what was in the contemplation of the parties when the license was originally granted. If such were the rule, then other poles, as well as other wires, might be added. The rule proceeds on the theory that the grantee purchased with knowledge of an existing structure, and can not therefore insist on the right of removal. The rule should not be extended to include a burden not existing at the time of the purchase. It can not be doubted that additional wires would impose an additional burden. Employees whose presence on the land would not otherwise be necessary would have to go on the land for the purpose of

stringing the wires and keeping them in repair. Not only so, but the additional wires would necessarily increase the chances of injury to the owner's family and employees, as well as to his stock. We therefore conclude that the company's right in the premises is limited to the maintenance of the telephone line as it existed at the time of Durbin's purchase, and that Durbin is not estopped to complain of the stringing of additional wires.

Wherefore the judgment is reversed and cause remanded for proceedings not inconsistent with this opinion.